IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-00625-MSK-KLM

RAUL HURTADO, and
ALTAGRACIA HURTADO,

    Plaintiffs,

v.

PASSMORE & SONS, L.L.C., an Oklahoma company,

    Defendant.
_____

**ORDER GRANTING MOTION TO COMPEL DISCOVERY**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Plaintiffs' Request for *In Camera* Review of Documents Contained Within Defendant's First Amended Privilege Log and Motion to Compel Disclosure of Documents Not Disclosed as Referenced in Defendant's First Amended Privilege Log** [Docket No. 55; May 25, 2011] (the "Motion"). Prior to the Motion's filing, the Court conducted a hearing to attempt to informally resolve the parties' dispute [Docket No. 54]. Finding that further briefing was necessary, the Court directed (1) Defendant to amend its privilege log; (2) Plaintiffs to file the Motion; and (3) Defendant to file a Response [Docket No. 61]. The Motion is now fully briefed and ripe for resolution. Having considered the parties' oral arguments and briefing,

IT IS HEREBY **ORDERED** that the Motion is **GRANTED** for the reasons set forth below.

This matter involves the alleged injuries sustained by Plaintiffs resulting from an

...

automobile accident with a vehicle being driven by Defendant's employee.[1] *See Scheduling Order* [#14] at 3-4. Defendant denies that its driver caused or negligently contributed to the accident and attributes Plaintiffs' alleged injuries to the conduct of Plaintiff Raul Hurtado and others. *Id.* at 5. The Court's jurisdiction is based on the diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332.

The Motion pertains to discovery of the insurance claim file prepared by Defendant's insurance carrier following the accident. Pursuant to Defendant's supplemental initial disclosures, Defendant disclosed a portion of the insurance claim file but withheld the remainder based on an assertion that the documents and emails were protected by the work product privilege. *See Motion* [#55] at 3. As a preliminary matter, Plaintiffs contend that Defendant's privilege log is insufficient and fails to provide a necessary explanation of the nature of the documents so as to allow determination of whether the work product privilege applies. *Id.* at 3-4. To this end, Plaintiffs request that the Court conduct an *in camera* review of the documents. *Id.* at 4. Plaintiffs also contend that the documents and emails were prepared or created in the ordinary course of business and are not protected by the work product privilege. *Id.* 4-6.

In response, Defendant argues that the documents and emails withheld from the insurance claim file were prepared by counsel or were created for purposes of communicating necessary information to counsel in conjunction with counsel's investigation of the accident at issue. *Response* [#61] at 4-6. Defendant characterizes the fruits of the

---

[1] Plaintiffs also sued a second Defendant, May Trucking Company, whose employee allegedly contributed to the accident. Plaintiffs resolved their claims against this Defendant and voluntarily dismissed it as a party [Docket Nos. 27 & 28].

investigation conducted by counsel as work product because the investigation was conducted in relation to a third party claim in anticipation of litigation.  *See id.* at 5.

As an initial matter, the parties appear to disagree as to the law that controls the applicability of the work product privilege.  Plaintiffs do not directly address the issue, but cite to Colorado state law.  *Motion* [#55] at 4-6.  By contrast, Defendant contends that federal law applies to this issue and limits its analysis to cases addressing the privilege pursuant to federal law.  Despite the fact that jurisdiction in the case is based on diversity of citizenship between the parties, federal law supplies the parameters of the work product privilege.  *Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (noting that, "[u]nlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)").  Therefore, Plaintiffs' citation to state law in support of their position is inapposite and the Court looks to federal law to supply the standard governing the applicability of the work product privilege.

Fed. R. Civ. P. 26(b)(3) exempts from disclosure all "documents and tangible things that are prepared in anticipation of litigation."  As noted above, Defendant argues that the documents and emails withheld from the insurance claim file were prepared in anticipation of litigation and are protected from discovery by the work product privilege. The Court finds the analysis in *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125 (D. Colo. 1993) to be helpful in framing the issue.  In *Weitzman*, a court in this District recognized a distinction between first party and third party insurance claims when considering whether documents contained in the claim file were protected by the work product privilege.  Investigations of first party insurance claims, e.g., claims made by the insured to his or her insurer, typically

"do not involve liability investigations . . . . When an insured presents a first party claim, he is asking for payment under the terms of the insurance contract between him and the insurance company. . . . There is no initial contemplation of litigation." *Id.* at 126. In investigations of third party claims, e.g., claims arising from conduct of the insured in relation to the injury of another (as the claim can be characterized here), typically "the investigation is made in anticipation of claims, which, if denied, likely will lead to litigation." Specifically,

> Although a claim may be settled short of instigation of legal action, there always is the possibility that the claim will end in litigation. The recognition of this possibility provides the insurer the impetus to gather information regarding the circumstances of the claim. In a sense, liability insurance is nothing more than litigation insurance. For this reason, it is logical to conclude that, while claim files generated in relation to first party claims are made in the ordinary course of business and are discoverable, files generated during the investigation of third party claims are made in anticipation of litigation and are not discoverable.
>
> . . . Because of the adversarial nature of the relationship between an insurer and a third party claimant, this Court finds that the [insurance] claims file is protected by the work product doctrine and is not discoverable, absent a showing of substantial need.

*Id.* at 126-27 (citations omitted).

Furthermore, the *Weitzman* court noted that even applying the standard set forth in *Hawkins v. Dist. in and for the Fourth Judicial Dist.*, 638 P.2d 1372 (Colo. 1982), the state law case primarily relied upon by Plaintiff here, third party insurance claim file documents are not discoverable considering the exception recognized by the Colorado Supreme Court, i.e., "under appropriate circumstances an insurance company's investigation of a claim may . . . shift from an ordinary business activity to conduct 'in anticipation of litigation.'" *Weitzman*, 151 F.R.D. at 126 (quoting *Hawkins*, 638 P.2d at 1378). The *Weiztman* court

found that a third party claim implicated an "appropriate circumstance" to deviate from the normal rule that "insurance adjusters' investigative reports are prepared in the ordinary course of business and, therefore, are discoverable." *Id.* at 127.

However, while crediting that there is a difference between first and third party claims, I find that there is a crucial distinction between *Weitzman* and the facts at issue here. In *Weitzman*, the insurance company had notice of an actual claim and had received a settlement demand from the third party. The insurance company then hired counsel to conduct an investigation. Documents and information derived thereafter were protected by the work product privilege. *See id.* In the present case, no claim (either formal or informal) had been filed by third parties (here, Plaintiffs) when counsel was hired and began an investigation. In addition, neither Plaintiffs nor their counsel contacted Defendant or its insurance carrier about filing a claim prior to or during the investigation. *See Motion* [#55] at 2, 5; *accord Response* [#61] at 2, 5.

To the extent that Defendant argues that it reasonably anticipated litigation under these circumstances, courts have noted that "[t]he need for an investigation and the knowledge that third parties may look to [the insurer] for damages reimbursement . . . does not instantly transform . . . investigative material into material created in anticipation of litigation protected by the work product doctrine." *Smith v. Marten Transp., Ltd.*, 10-cv-00293-WYD-KMT, 2010 WL 5313537, at *2 (D. Colo. Dec. 17, 2010) (unpublished decision); *see also Wikel v. Wal-Mart Stores, Inc.*, 197 F.R.D. 493, 495 (N.D. Okla. 2000) (noting that "because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind. Yet the mere fact that litigation does eventually ensue, does not, by itself, cloak

material with work product immunity"). In other words,

> [i]t simply does not follow that there will be a need for actual litigation of any one or more *potential* claims. Often cases such as this are simply resolved by negotiation over a payment to be made to innocent third parties involved in the accident. In fact this is the bread-and-butter work of insurance companies.
>
> . . . It is beyond cavil that such an accident would have to be investigated to answer the why, how, who, what, when and where questions concerning the origination of the accident before the [insured] could evaluate liability and pay claims if appropriate. . . . When [an accident is investigated] as any insurance company would[, the investigator] is not "anticipating litigation" any more than anyone involved in any transaction or event with persons may "anticipate litigation."

*Smith*, 2010 WL 5313537, at *2-3 (emphasis added). Moreover, it cannot be understated that "[a] substantial part of an insurance company's business is to investigate claims made by *third parties* against its insured. Therefore, courts uniformly hold that investigations usually are part of the normal business activity" and information derived therefrom is generally discoverable. *Id.* at *2 n.2 (emphasis added) (citation omitted).

While "at some point an insurance company's activity shifts from claims evaluation to anticipation of litigation," such does not occur until "the probability of litigating the claim is substantial and perhaps imminent." *Henderlong v. Allstate Ins. Co.*, No. 08-cv-01377-CMA-MEH, 2009 WL 82493, at *2 (D. Colo. Jan. 13, 2009) (unpublished decision); *see also Wikel*, 197 F.R.D. at 495 (noting that "[i]nvolvement of an attorney is not dispositive of the 'in anticipation of litigation' issue"). Because there was no actual claim pending when the investigation was undertaken here, nor had Defendant been contacted by Plaintiffs or their counsel about filing a potential claim, I find that the documents and information derived therefrom are not protected by the work product privilege. It is Defendant's burden to prove that something particular about this investigation (where only the threat of *potential* third

party claims was present) prompts a different result.  *See Weitzman*, 151 F.R.D. at 127.  It has not done so, and I find that the work product doctrine does not apply to the documents at issue.

Nevertheless, where, as here, the investigation is conducted at least in part by counsel, the materials contained in the insurance claim file may be protected by the attorney-client privilege.  *See Smith*, 2010 WL 5313537, at *3.  However, the Court notes that Defendant failed to raise the application of the attorney-client privilege either at the hearing or in its first amended privilege log (which was prepared by defense counsel at the Court's prompting following the hearing) [Docket No. 55-1].  Defendant raises the objection for the first time in its Response and submits a second amended privilege log [Docket No. 66-1] indicating that every document is protected both by the work product privilege and now by the attorney-client privilege.  Arguably, Defendant's failure to timely raise the objection related to attorney-client privilege waives its ability to pursue this objection here.  *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 661-62 (D. Colo. 2000) (noting that any ground for objection to producing requested discovery is waived if not timely raised).  However, because "the attorney-client privilege is personal with the client," and can "be waived only by the client," the Court elects to consider whether the documents and communications at issue are protected by the attorney-client privilege.  *See People v. Madera*, 112 P.2d 688, 690 (Colo. 2005) (citation omitted).

As a preliminary matter, the applicability of the attorney-client privilege to the documents contained in the insurance claim file is governed by Colorado state law.  *Bonanno v. Quizno's Franchise Co.*, 255 F.R.D. 550, 554 (D. Colo. 2009).  The party claiming that the privilege applies bears the burden of proof on this issue.  *In re Foster*, 188

F.3d 1259, 1264 (10th Cir. 1999).  Not every document drafted by counsel or every communication with counsel is protected by the attorney-client privilege.  *See Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Court*, 718 P.2d 1044, 1049 (Colo. 1986).  For example, "the attorney-client privilege does not protect the results of a factual investigation [conducted by counsel] relating to the issuance of a policy."  *Id.*

The question of whether any of the eighteen (18) documents listed in the second amended privilege log are subject to the attorney-client privilege is addressed by considering whether:  (1) the information was provided by agents of the corporate client "to counsel acting as counsel" at the direction of supervisors, (2) the information was necessary for the provision of legal advice, (3) the agents were aware that their communications were made for the purpose of counsel rendering legal advice to the corporate client; and (4) the communications were treated as confidential.  *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981)).

Addressing the second and third factors first, although Defendant suggests that the documents or communications were created for the purpose of obtaining or rendering legal advice, it refers only to the timing of when they were created, namely after retention of counsel.  *See Response* [#61] at 2-3.  However, mere retention of counsel does not always give rise to protection of the privilege.  For example, where, as here, counsel's activities "consist[] of conducting interviews of various officers and employees for the purpose of determining the factual circumstances [of the matter at hand,] . . . the attorneys [are] acting more in the role of claims investigators than legal counsel."  *Nat'l Farmers*, 718 P.2d at 1049.  Therefore, on these pleadings, I find that Defendant has not sufficiently shown that the documents and communications were created for the purpose of obtaining or rendering

legal advice or that the participants were so advised.

In relation to the first and fourth factors, Defendant does not directly address whether the communications were made at the direction of supervisors or whether the participants were aware that their statements were going to be treated as confidential. Although Defendant contends that counsel was acting as counsel, it does not specifically explain how counsel's actions deviated from those of an investigator. Therefore, on these pleadings, I find that Defendant has not sufficiently shown that the documents and communications fall within the remaining factors subjecting them to protection.

> In the absence of these factors, the extension of the attorney-client privilege to the circumstances of this case results in cloaking with confidentiality communications [and documents] that, so far as the record shows, [sh]ould have been forthcoming . . . [and Defendant's] contention that the attorney-client privilege protects [the materials of the investigation] from discovery is not tenable under these circumstances.

*Id.* at 1049-50; *see also Smith*, 2010 WL 5313537, at *4 (rejecting assertion that sending an investigative document or interview to counsel automatically "create[s] an attorney-client privilege as to this document").[2] Where, as here, Defendant has not even minimally met its burden to show that the attorney-client privilege applies, nor is it clear that review of the documents would change the result, the Court does not find it necessary to conduct an *in camera* review of the documents prior to disclosure. *See generally Kovacs v. Hershey Co.*,

---

[2] Moreover, although my holding does not necessarily depend on the appropriateness of either of Defendant's privilege logs, the Court notes that there is no explanation as to how certain documents (which do not appear to have been created by or sent to counsel) are protected by the attorney-client privilege. *See Docs.* McMil-Email-009, McMil Rpt-001, McMil Rpt-002, McMil Rpt-003, McMil Rpt-004, McMil Rpt-008. To the extent that one of the individuals involved with these documents is an attorney, such information has not been conveyed to the Court. *See Horton v. United States*, 204 F.R.D. 670, 673 (D. Colo. 2002) ("The information provided in the privilege log must be sufficient to enable the court to determine whether each element of the asserted privilege is satisfied.").

No. 04-cv-01881-WYD-BNB, 2006 WL 2781591, at *11 (D. Colo. Sept. 26, 2006) (unpublished decision) (noting that court is not required to conduct an *in camera* review merely because privilege raised). Accordingly, the Motion is granted.[3]

IT IS FURTHER **ORDERED** that Defendant shall produce the documents at issue (in the first and second amended privilege logs) without redaction on or before **July 5, 2011**.

Dated: June 27, 2011

BY THE COURT:

 s/ Kristen L. Mix
Kristen L. Mix
United States Magistrate Judge

---

[3] Although Plaintiffs request *in camera* review of the documents (assuming that the Court credited the application of a privilege), the primary relief sought by Plaintiffs is disclosure of the documents. Because disclosure is ordered, I determine that my decision is best characterized as granting the Motion in full.